The final case on the call this morning is number 123052, People v. Rios-Salazar, agenda number four. Mr. Golfus, when you are ready, you may proceed. Good morning, Your Honors. May it please the Court. Counsel, I'm Dimitri Golfus. I'm from the Office of the State Appellate Defender, and I represent Aaron Rios-Salazar. There is one question presented in this case, and that's whether Mr. Rios-Salazar was deprived of his effective assistance of counsel because counsel in the trial court failed to challenge two ex post facto fines. The appellate court concluded that counsel was not ineffective. Each of the two justices in the majority reached this conclusion for a different reason. Justice Schmitt concluded that the amount of money at issue, $57, was de minimis and therefore too small to be an error of constitutional magnitude. Justice Wright concluded that because the trial court had neglected to impose a mandatory $107 surcharge, Mr. Rios-Salazar was not prejudiced because the amount of that surcharge exceeded the amount of the ex post facto fines at issue. Your Honors, my hope today is to address three points with the Court. The first and second are to explain why the positions taken by Justices Schmitt and Wright are incorrect, and the third is to explain why the State is incorrect to argue that prejudice under Strickland requires something more than establishing a Strickland's outcome determinative test. Specifically, that Mr. Rios-Salazar and other defendants have to demonstrate that the result of the underlying proceeding was fundamentally unfair or unreliable. With that said, I acknowledge that the parties dispute whether the $25 courthouse assessment is a fine. I'll be submitting that issue to the Court on my briefs alone. However, if the Court have any questions about that issue, I will certainly address them. With respect to Justice Schmitt's position that $57 is a de minimis amount of money and therefore counsel is not deficient for failing to object to that, that's not a position that the State has adopted on appeal, and for good reason. There's no such thing as a de minimis exception to claims of ineffective assistance of counsel. The only proper inquiry is Strickland's deficiency inquiry, which asks whether counsel's failure to challenge the ex post facto violations was unreasonable under prevailing professional norms. And it was in this case, because counsel had an obligation to seek the least burdensome sentence possible for Mr. Rios-Salazar, and that included doing so by challenging unlawful fines. If we determine it's a fee, does that mean we don't need to reach the ineffective assistance issue? If you determine that the courthouse assessment is a fee, you still have to reach not for the courthouse fee, but there's still another assessment, the violent crime victim assessment that we argue is a fine. Courts of Hell is a fine, and the State on appeal does not dispute that that is a fine. So you would have to reach ineffective assistance of counsel claim for that fine. Another problem with the de minimis position is that it fails to appreciate that even small amounts of money, such as $57, are not de minimis to indigent defendants. Even one dollar may be important to someone who is indigent. Your Honors, the value of a dollar means different things to different people. What may be trivial to one person may not be to another. Consequently, using a de minimis exception would be incredibly difficult, if not impossible, because you just don't know where to draw the line. Do you violate the professional standards, or does an attorney violate the professional standards if he or she fails to raise every fee or fine issue? I would say that a trial attorney would, because a trial attorney has the obligation to seek the least burdensome sentence possible. An appellate attorney has a different standard. They don't have, according to the United States Supreme Court, an obligation to raise every non-frivolous issue possible. So an appellate attorney would be different. But I think trial counsel, the answer to your question would be yes. Counsel, does counsel's failure to raise an ex post facto defense constitute deficient performance? Yes, absolutely. And the reason for that is, again, because we know that there's at least, say you can see that there's at least one ex post facto violation here. And there's at least one. It would have undone that fine, at least that fine, because it was, in fact, an ex post facto violation. So you have deficient performance and you have pressures. With respect to Justice Wright's position and the position that the state is arguing on appeal, the court's failure to impose a mandatory $170 surcharge did not justify counsel's failure to stay silent about the ex post facto violations. Counsel could not shield Mr. Rios-Salazar from the imposition of a mandatory surcharge. At that time, and even today, there's a risk to Mr. Rios-Salazar that that surcharge will be imposed. For example, the state, whether it be Attorney General's Office or the Wilkiness Attorney's Office, could seek that from Mandamus. And an attorney for Mr. Rios-Salazar has to account for that. And he has to challenge the ex post facto violations to avoid putting Mr. Rios-Salazar in the worst case scenario, a scenario where he has to pay the mandatory surcharge because the state later seeks it. But he also has to pay the ex post facto amount because counsel never challenged it. And because counsel didn't challenge it, he's without a remedy to get it. But in this case, if he had done that, wouldn't the court add additional fines to be more than what he's paid now? That's possible. We don't know. It's possible. The $170 fine would be additional. Correct. It's possible that the court could have done that. We don't know. But what we do know is had counsel stayed silent and not raised the ex post facto issue, he could be putting his client in a position where that surcharge is later imposed through, say, Mandamus. And then his client no longer has a legal remedy available to him to get what is due to him, the ex post facto amount. And his client is out money that he should have gotten because of counsel's failure to act. And that can't come under the ambit of trial strategy then? I'm not going to challenge this because at this point I'm saving the $170. If I bring fines up again, there's a chance that $170 is going to be assessed. That's not trial strategy at that point? It's not a reasonable strategy because you're leaving your client in a position where the state can get what it's entitled to. But if you don't raise what your client is entitled to, you're putting your client in a position not to be able to get that in the future. You're essentially forfeiting that. So you're subjecting your client to a position where, a worst-case scenario, the state gets something that it's not entitled to get and there's nothing that your client can do about it. But again, if he raises it and it's done correctly, it will cost his client, right? Yes, it would cost his client, yes. But that's not trial strategy? No, it's not because the defendant has no right to say, I shouldn't pay that. The law requires it. Counsel should get what he can for his client because counsel cannot shield his client from what the state is entitled to. Even when trial counsel's job is over, the state can still come back and get that money. Did you make any plain error argument here? I did not, no. Your Honor, even though the court neglected the surcharge, Mr. Rios-Salazar was sole prejudice, as I alluded to before. In order to establish prejudice under Strickland, Mr. Rios-Salazar has to demonstrate that there's a reasonable probability that had that ex post facto violation been raised, the results of the proceeding would have been different. That's satisfied here because, again, had counsel raised it, the court would have seen that there's an ex post facto violation and Mr. Rios-Salazar would have been better off because, again, it was, in fact, an ex post facto fine. The state argues that Mr. Rios-Salazar, by requesting that these constitutional violations be remedied, is requesting a windfall. That is not what is happening. Mr. Rios-Salazar is asking that two constitutional violations be addressed, but he's also taking action to ensure that the state doesn't receive a windfall in circumstances where the state obtains a $170 surcharge but also holds on to the ex post facto amount because his attorney never challenged it. The only way to ensure that the state does not receive a windfall is for counsel to challenge the ex post facto violations. Finally, the state argues that in order to demonstrate prejudice under Strickland, Mr. Rios-Salazar not only has to demonstrate Strickland's outcome determinative error test, he also has to show that the sentencing proceeding was fundamentally unfair or unreliable. But that is not the law. The United States Supreme Court in Williams v. Taylor said that the Strickland prejudice test is sufficient to resolve virtually all claims of ineffective assistance of counsel. It is a limited exception to Strickland to make an inquiry into the fundamental fairness or reliability of the proceeding only when the defendant is not arguing that counsel's deficiency deprived them of a substantive or procedural right that the law entitles them to. And the examples that we saw are in Nix and Lockhart. In this case, Mr. Rios-Salazar is arguing that counsel deprived him of a substantive right because he is arguing that counsel's failure to challenge the ex post facto violations prevented him from exercising his right to be free from ex post facto punishments. If, for example, Mr. Rios-Salazar was arguing because of something counsel did that mandatory surcharge was imposed and had counsel not acted, that surcharge wouldn't have been imposed, that would be a request for a windfall. He would be relying on the luck of a lawless decision maker. But that's not what's happening here. He's exercising a right that the law entitles him to exercise, a right against ex post facto punishments. So for these reasons, Mr. Rios-Salazar was deprived of the effective assistance of counsel. He would respectfully request that this court reverse the appellate court's fine and reduce the $100 violent crime victim assistance fine to $68. And if the court has any further questions. You're not asking then for resentencing? No. Thank you. I thank the court for its time. Thank you. Thank you. Counsel. May it please the court, opposing counsel, my name is Nick Moeller of the Office of the Attorney General, and I represent the people of the State of Illinois. At the heart of this case, there are three assessments. There's the judicial facilities fee, and the victims, I'm sorry, the violent, the victims of violent, one more time. And there's the violent crime victim assistant fine. VCVA. The VCVA fine. Those two errors, or those alleged errors, which the defendant cites, together cost defendant $57 of the erroneous portion. The third assessment was a mandatory criminal surcharge fee. Fine. That was not assessed by the court. That fine was worth $170 and was an error in defendant's favor. Now because the error in defendant's favor was nearly three times the amount of the test. He cannot show that trial counsel acted efficiently because there's a reasonable trial strategy that explains counsel's actions. He didn't object to the small errors that hurt defendant because if he did so, he'd likely bring about the correction of the bigger error that helped defendant. Similarly, he cannot show credit. Is counsel correct? Could the state have come back at a later time to correct the error? Yes, Your Honor. The state could, but it has not done so, and it does not plan to do so. Well, that goes to whether or not he was prejudiced, I assume. But as far as the trial strategy portion, is that a legitimate or reasonable trial strategy to not bring up? Because you admit that the fine imposed, the VCVA fine imposed, violated ex post facto law. Yes. So is that legitimate trial strategy to not bring that up to the trial court in hopes that not only does the trial court not remember this other fine, but the state doesn't proceed at a later time with the other fine? Correct, Your Honor. I think it's important at this stage to remember that there's a difference between the first prong and the second prong of Strickland. The second prong, the prejudice prong, is the one that deals with what was likely probable to happen. That's not what you have to show when you're showing that something was reasonable trial strategy. It's not that something was going to happen. What we're looking at, and though counsel calls it speculation in his brief, it's really a matter of presumption. This court has been directed through Strickland to presume that trial counsel was acting effectively. It's to presume that if there's a reasonable strategy that can be found, that that is what trial counsel was doing, as long as it's not rebutted by the record. And I would say this is basically the defining type of nature of what trial strategy would be. Trial strategy means accepting some sort of concession or loss against your defendant in the hope that something worse won't happen. Defense counsel didn't have to be right. Defendant's not entitled to a perfect representation from counsel, nor that counsel is anything more than effective. What happened here is trial counsel was looking at an assessment sheet. On that sheet, there are two small errors that maybe he can object to and have result in his favor. One of them we concede he could, the VCBA fine. But in doing so, it was very likely that either the state or the court was going to be made aware of this much larger error that was benefiting defendant. Any rational trial attorney seeing this would have at least considered that the $57 in defendant's favor. It's important to know that it was likely that that's what would have happened. First, defendant's not complaining that there was one error in this assessment sheet. He was going to be saying there were two errors on this assessment sheet. And wherever you find multiple errors, there's a likelihood there's going to be more. Either the court or the state would probably say, if there's two mistakes, we better check to make sure there aren't more there. It also doesn't help that these are not simple mistakes. Defendant was not arguing that there was a typo or a misnumber or wrong math. These were matters of ex post facto principle violations. This was because the case is an unusual one. The crimes at heart took place in 2010, and the prosecution didn't happen for almost five years later. Because of that, that meant some of the statutes that were in effect at the time of sentencing weren't going to have been in effect at the time of the crime. And if there are a couple of those like that, the court or the state, if they were being prudent, would realize the same error could have arisen from those unusual circumstances and decided that they should go back and check the entire assessment. We also know that trial counsel thinking this is a risk was reasonable because this is exactly what happened. On appeal, appellate counsel had a different strategy. Rather than ignoring the error, they called the error to the court's attention, and the court recognized that there was a larger error in defendant's favor. This shows that not only was it possible that defense counsel objecting could have called the attention of the court, it did. Now, with trial strategy, it's long been accepted that defense counsel cannot raise a meritorious objection in order to help the defendant. Whether it's hearsay that counsel doesn't object to because they're worried that the state will bring more witnesses and more evidence that's harmful to the defendant, whether it's other evidentiary matters which end up actually benefiting defendant or boosting their side of the case, or even just errors that defendant doesn't want to call the jury's attention to and make the error bigger by calling attention to it, this is a decision along those lines. And because of that, it was reasonable trial strategy not to object. But for similar reasons, it shows that there was no prejudice because had counsel objected to the smaller errors, he likely would have drawn attention to the bigger errors. We saw that happen in the appellate court. What would have happened in the end is that the court would have said, sure, those $57 should not be assessed against you. Here's the $170 that should be assessed against you. The defendant ends up financially worse off. Defense counsel made a point of arguing that defendants care about every dollar. And I would agree. But what they probably don't care about is what that assessment is called. This is an instance where if you're looking at a defendant, what they're going to care about at the end of the day is, was their attorney able to minimize the financial burden? The defendant's not going to care about which fine or fee that is. They're going to care about, do I pay less or do I pay more? There's another side of the prejudice argument that has to be addressed, and that's the question of whether this was legitimate Strickland prejudice. In most cases, it's true. It is a purely outcome determinative test. We ask, was counsel's actions reasonably likely to have affected the outcome, to have changed the outcome? But the United States Supreme Court has said there are some cases, and the language in Strickland itself acknowledges there are cases, where that's not the only test. There's a question of whether what you're seeking, regardless of your outcome at trial or at sentencing or at a different instance being different, the question has to be, is that the type of prejudice the court cares about correcting? The two cases that most prominently deal with that are Lockhart v. Fretwell, in which defense counsel failed to object under case law that eventually was ruled to be bad case law. And the Supreme Court said, you're not entitled to the luck of a lawless decision maker. You can't use the mistakes of the court or the mistakes of law to establish prejudice. In Nix v. Whiteside, the defendant argued that his counsel was ineffective because he didn't allow him to put on perjured testimony. The United States Supreme Court again said, no, while there might be prejudice in the sense of, yes, the jury might have believed you. Yes, you might have been acquitted. That's not the prejudice that we're going to allow to count. You can't use mistakes of law. You can't use errors of law or the misuse of law to show that there was Strickland prejudice. Now, this is a case that falls along those lines because when we look at the practical effect of defendant's argument, he's saying he's not getting the full windfall of the error the trial court made in not assessing him $170. Defendant was ultimately assessed in this case $1,587. If you take defendant's arguments as true for the sake of argument and add back the money he shouldn't have been charged and then do the mandatory surcharge, defendant actually should have been charged $1,700 in assessment with the criminal surcharge. By giving him back the $57 at this point, it would just be acknowledging that, gee, the court made a $170 error in your favor. We're sorry you didn't get the whole amount of that. Because using common sense, using a knowledge of how the court system works, we know that it's possible, yes, the state could be seeking mandamus, could seek mandamus to correct this. But the state hasn't. The state has no plans to. And that's just not the way the state tends to work in these cases. The state is not, after a conviction, going to go back to every victory and make sure that every little fine was collected that could have been collected. The state is not going to, years later, spend the money and the time on an appeal to get less than $200. There are some cases in which the state has used remedies to try and change the sentencing of defendant, which defendants cited in their brief. But they're not cases like this one. They're cases where there was an actual sentencing issue in the term of years, which was at issue, which is a very different situation than less than $200. There was one case that dealt with fines, but that was a case that dealt with over $2,000 in fines that were an error. This is just not an error large enough for the state to expend the energy to try and correct. To do so would, in the long run, probably outweigh the benefit they'd be receiving. Do you agree with opposing counsel that failure to raise a fee or fine question is a violation of professional norms? I would say it could be, Your Honor. If this were a case where the $170 surcharge did not apply, a case where, looking at the record, you cannot find a reasonable trial strategy for not objecting, that would be a case where Strickland would apply. If it were just the one error, and let's say the VCVA, because that's the one that's not, there's no argument about, if there had only been that error, and that was the only question, yes, that would probably establish Strickland. The state is not forwarding the argument of the lead opinion and the appellate opinion that there is such thing as de minimis Strickland. So that's the reason prejudice for both, even if we took them to be meritorious, why that would not establish legitimate prejudice. The United States Supreme Court has come back in some cases and said you can't use this fairness inquiry in every case. The one case directly remarked upon by counsel was Williams v. Warden of Mecklenburg, which was a Virginia case. And it's important to note that in that case, when the United States Supreme Court said this exception can't be used, in the underlying case, in the Virginia High Court, what had happened was defendant had said, my counsel didn't put forth any mitigating evidence in my death penalty phase of the trial. If he had done so, I likely would have convinced at least one juror I should not get the death penalty, and that would be enough to show prejudice. The Virginia State Court in that aspect said even if you're true, even if you can show that you could have convinced one juror, we looked at the entire thing and it wasn't an unfair hearing. It wasn't an unfair situation, so that's just not going to be enough for Strickland. That's an argument in line with what happened in the lead opinion in the appellate court. That's basically a de minimis argument. That's not the argument we're making. We're saying that the prejudice seeking to be recouped is a matter of an error by the court. It's hoping that they get the luck of the lawless decision maker who did not decide to charge the $170. Finally, I'd like to address the judicial facilities fee. Because in that case, since the judicial facilities fee is a fee, counsel could not have been deficient for failing to object, nor could the defendant have been prejudiced because as a fee it would not have been, it would not have affected ex post facto principles, and therefore any objection would have been non-meritorious. When we're looking at whether something is a fine or a fee, the question this court has said is simply is it compensatory for the prosecution of the defendant? While it's not dispositive, this court has noted that the best evidence of that is the legislature's words and how they describe it because in the end it's a matter of statutory interpretation. In this case, the legislature explicitly termed the judicial facilities fee a fee. Not only that, they said what was being compensated, it's a fee for the judicial facilities, and that in and of itself is enough to show that's what the legislature intended this to be. But even if the inquiry doesn't stop there, looking to the other factors, we can see that this is meant to compensate the state for the use of the judicial facilities during defendant's prosecution. First, when looking to the legislative history, it is repeatedly referred to by the sponsors of the bill as a user fee. This is a fee put in place on the people who use the courthouse to compensate for the use of that courthouse. That's because, as anyone can tell, when you use a building, particularly public buildings with many people, it's going to depreciate. There's going to be wear and tear that needs to be compensated somehow. Another factor that shows that this is a compensatory fee is who's actually being charged this fee. It's all civil litigants. It's all convicted criminal defendants, and it's those defendants in ordinance violations and traffic violations, things of that nature, who don't plead guilty and actually end up coming to court. So the people who don't have to pay are the people who choose to plead guilty and stay home. They're not using the judicial facilities, and therefore they don't have to pay the compensatory judicial facilities fee. Finally, when you look at where the money is going, it also shows that this is compensatory. The money is going towards new judicial facilities because the old ones need to be replaced. Since the money is so clearly tied to the matter being compensated, it's easy to see that the legislature intended this to be compensation for the use of judicial facilities. So unless there are any questions by the court, we would ask that for these reasons and the reasons in our brief, this court affirm the judgment of the lower courts. Thank you. Thank you. Mr. Golfos, reply. Your Honor, I'll pick up where counsel left off. Since you brought up the judicial facilities assessment, I'll address it. An assessment is a fee if and only if it reimburses the state or the county for a cost of prosecuting the defendant. This fee is imposed for purposes of generating revenue to build a new courthouse in Will County. And the only point I would make on that is it's hard to see how a courthouse or judicial facility that's yet to be built and has not been used by any defendant yet reimburses the state for a cost of someone's prosecution. The defendant hasn't been prosecuted there yet. No case has occurred in this new courthouse. So it just does not meet the test. Additionally, the fee, the fine is only imposed on defendants who have been found to have committed an offense. If the case is dismissed or if they're acquitted, the fine is not imposed. So in that light, it is a penalty, at least with respect to criminal cases. Just because it's also imposed on civil litigants doesn't mean that it can't be a fine. It could be a tax on civil litigants. Recently in People v. Harvey, this court encouraged both defense attorneys, prosecutors, and courts to work on the assessments, to look at the authorizing statutes, and to get them right. And it would be great if they did that, but we're continuing not to do that. And if the prosecutor, defense counsel, and the trial court all did their job in this case, we wouldn't be here. And I think we should be encouraging to do their job. I can't tell you how many times I've never read a record and actually seen the litigants dispute assessments. It just doesn't happen outside of a public defender fee or occasionally a street value fine. It doesn't happen. Because for whatever reason, maybe not important, I don't know, but it needs to happen because the state argues well. Doesn't that go against your argument that it is a legitimate trial strategy? I mean, couldn't the defense counsel have felt what are the odds of the state taking a mandamus action for $170 a fee? I mean, probably not that great, right? But that also goes in my favor because if counsel evaluates everything and sees that his client is out $57 and sees that the court and the prosecutor missed a mandatory surcharge, if he's thinking to himself, well, the odds of the state pursuing this aren't high, then your client's not going to get hurt if you try to get your client what he's due. Does the attorney, if he brings it up, have a duty to point out that the mandatory fee was overlooked? Yes and no. I don't think defense counsel has a job. It's not defense counsel's job to do a prosecutor's job. Now, if the court were to ask defense counsel. But you argued, I think, that it is all counsel's job to make sure that the assessments are accurate, which we've said. Sure. I think the state needs to seek what the law entitles the state to get, and the defense counsel needs to make sure that there aren't any errors that affect his client. Getting back to the original question, I don't think the defense attorney needs to do the prosecutor's job. However, if the court were to ask defense counsel, do you see any problems on this cost sheet, defense counsel can't say no if there's a problem. I mean, that would violate certain ethical obligations. You can't lie to the court. But defense counsel doesn't have, it's not his job to do the prosecutor's job. I think it's important to note that if this court were to accept the state's argument and say that in circumstances like this where you have illegal fines imposed, but you also have another fine that's mandatory that hasn't been imposed, that it's a reasonable strategy to do that for counsel just to stay silent because you don't want to tip off the court or the prosecutor about this neglected fine, defendants aren't going to have a remedy in the future to get that illegal, to get the illegal fine remedies if counsel's conduct is considered reasonable. You're not going to be able, defendants are not going to be able to file a PC because the underlying claim would have been waived. You can't accuse counsel, either trial or appellate, of being ineffective for failing to raise the fine because that was considered to be reasonable. You can't pursue it for mandamus because you had another adequate remedy, the trial court and the appellate court, which you didn't raise it in. You can't file a 214-01 because you're not raising facts that weren't brought up before or were unknown that existed at the time this fine was imposed. Certainly couldn't demonstrate due diligence because you didn't raise it before. There's no remedy for a defendant to get this money if counsel stays silent and then the state gets the neglected fine through mandamus. The defense is going to be out of luck. Mr. Kramer asked a very interesting question that is somewhat of a dilemma, right, for the defense counsel. If I do raise this, do I have an ethical obligation to say, but by the way, you did miss this $170 fine that would have been assessed? We're just standing silent. I mean, does that go into reasonableness, the fact that he has to debate this ethical conundrum? I think he certainly has to tell the client. But, again, I reiterate my prior position that you don't have to tell the court unless the court asks you to harbor any errors. You don't have to do the prosecutor's job or the state's job for it. So if the judge says, do you see any other errors? You have to be honest with the court and say yes. Yes. I guess final point. If Mr. Rios-Salazar is put in a position where counsel doesn't challenge the ex post facto fines, then the state does obtain the mandatory surcharge through mandamus. I think Mr. Rios-Salazar, as someone who has been in prison for several years now, is probably going to spend the rest of his life there, who is indigent and who has a family back home that needs to be supported, will certainly ask counsel, well, why didn't you get that money for him when you had the chance? And now, because you didn't act, I have to pay even more than I did before. I think a defendant would care in those circumstances. So if there are no further questions, we would again ask this Court reverse the appeal court's judgment. Thank you. Thank you. Case number 123052, People v. Rios-Salazar, will be taken under advisement as agenda number four. Mr. Golfos, Mr. Mohler, we thank you for your arguments today. You are excused.